**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH, NORTHERN DIVISION**

| | |
|---|---|
| **MILISSA PIETSZAK,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**SMITH'S FOOD AND DRUG CENTERS, INC.,**<br><br>**Defendant.** | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT SMITH'S FOOD & DRUG CENTERS, INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br>**Case No. 1:22-cv-00027-DBP**<br><br>**Magistrate Judge Dustin B. Pead** |

## INTRODUCTION

The parties in this case consented to United States Magistrate Judge Dustin B. Pead conducting all proceedings, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit (ECF No. 14). *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73

Plaintiff Milissa Pietszak ("Pietszak") alleges her former employer, Defendant Smith's Food and Drug Centers, Inc.'s ("Smith's" or "Defendant"), retaliated against her in violation of Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act ("ADA"), and the Family and Medical Leave Act ("FMLA"), failed to accommodate her under the ADA and interfered with her FMLA rights.

Pending before the court, is Defendant's Motion for Summary Judgment (the "Motion") (ECF No. 18) in which Smith's seeks dismissal of all claims alleged by Pietszak. Pietszak concedes summary judgment is appropriate on her FMLA interference claim but argues there are material disputes of fact that preclude summary judgment on her remaining claims. Oral argument on

Defendant's Motion was held on July 20, 2023 (ECF No. 26). Upon review and for the reasons set forth herein, the court GRANTS the Motion.

## UNDISPUTED MATERIAL FACTS[1]

Smith's hired Pietszak to work in its floral department in February 2010 at Smith's Store #30 in Ogden, Utah.[2] In 2016 or 2017, Pietszak began working as a "selector" in the Smith's "Clicklist" department, where online grocery orders are filled.[3] Pietszak's position was later renamed to "e-commerce selector."[4] While working as an e-commerce selector, Pietszak typically reported to a single department supervisor.[5] Pietszak's job duties included "select[ing] customers' online orders in the most efficient manner with attention to freshness and quality."[6] Pietszak typically began her shifts at 5:00 a.m. so she could get orders out by 8:00 a.m.[7] Pietszak averaged "probably about 26 [or] 27 hours" per week, but her hours were "always fluctuating."[8]

In or around January 2019, Pietszak made complaints to Smith's Human Resources Department regarding the actions of another Store #30 employee, Eric Taylor ("Mr. Taylor").[9] Pietszak alleges she complained to her supervisor, Michael Benshoof ("Mr. Benshoof"), as well

---

[1] Except where noted, Pietszak does not dispute the material facts set forth in Defendant's Motion. Thus, the relevant facts in this opinion are drawn from Defendant's Motion.

[2] Pietszak Dep., App'x of Evid. Ex. A, at 9:10–10:16 (ECF No. 18-1).

[3] *Id.* at 12:6–13:4.

[4] *Id.* at 18:2–10.

[5] *Id.* at 22:20–22.

[6] *Id.* at 18:21–19:9.

[7] *Id.* at 20:2–12.

[8] *Id.* at 23:1–24:4.

[9] Compl. ¶¶ 15–16 (ECF No. 1).

as others in the store about harassment by Mr. Taylor.[10] Pietszak also told Mr. Benshoof and others at Smith's that Mr. Taylor's actions "were causing her daily fear and aggravating her anxiety and depression."[11] Pietszak made these comments to management "every time something happened with [her] and [Mr. Taylor]," which she asserts was "a daily thing" during much of 2019.[12] Also beginning in early 2019, Pietszak began making requests that she be transferred to other Smith's stores "because of the harassment" by Mr. Taylor and due to her "anxiety and panic attacks."[13] Pietszak was never granted a transfer, at least in part because other stores "never had enough hours to fully transfer [her] over."[14]

Throughout this time, Pietszak was aware of Smith's policies on time and attendance.[15] Smith's policies provided that a first occurrence of tardiness or absenteeism would result in a verbal notice; a second occurrence would result in a written warning; a third occurrence would result in a three-day suspension without pay; and for any further occurrence within a 12-month period, the employee would be "subject to discharge."[16] Pietszak also understood that Smith's employees would be suspended without pay for a first no call, no show and terminated for a

---

[10] *Id.* ¶ 17.

[11] *Id.* ¶ 16.

[12] Pietszak Dep., Ex. A at 40:6–16 (ECF No. 18-1).

[13] *Id.* at 58:12–59:16.

[14] *Id.* at 59:12–25.

[15] Smith's Time and Attendance Policies, App'x of Evid. Ex. B (ECF No. 18-1).

[16] *Id.*

second no call, no show violation within two years.[17] Pietszak acknowledged that Smith's

"reserves the right to schedule work hours as business and organizational needs require" and that

"work schedules may be changed at the complete discretion of Smith's."[18] Pietszak does not

dispute that pursuant to Smith's policy "[i]t is [the employee's] responsibility to know [their]

work schedule."[19]

      Between May 2019 and October 2019, Pietszak had numerous write-ups for tardiness and

absenteeism. Pietszak admits she had difficulty showing up to her shifts on time due, in part, to

ongoing methamphetamine use during this timeframe.[20] On May 31, 2019, Pietszak was 5.5

hours late for work and signed a Written Warning.[21] On June 25, 2019, Pietszak received a

second written warning notice for being late to her shift and again signed a warning notice.[22] On

September 20, 2019, Pietszak received an "Associate/Manager Coaching Form" for "[b]eing late

---

[17] Smith's Employee Handbook, Time & Attendance Policies, Ex. B, Pietszak Dep., Ex. A to 193:12–20 (ECF No. 18-1).

[18] Smith's Time and Attendance Policies, Ex. B; Pietszak Dep., Ex. A at 81:17–14 (ECF No. 18-1).

[19] Smith's Standard Operating Guidelines at 2-17, Attachment. 1 to Decl. of Cheryl Hedquist, App'x of Evid., Ex. C at ¶¶ 1–6 (ECF No. 18-1).

[20] Pietszak Dep., Ex. A at 103:24–104:23 (ECF No. 18-1) (admitting she told her therapist she "had problems at work related to substance abuse," including being "reprimanded several times" for absenteeism); *Id.* at 74:10-15.

[21] May 31, 2019, Written Warning, App'x of Evid. Ex. D (ECF No. 18-1).

[22] June 25, 2019, Written Warning, App'x of Evid. Ex. E (ECF No. 18-1); Smith's Time and Attendance Policies, App'x of Evid. Ex. B (ECF No. 18-1); Pietszak Dep., Ex. A at 76:17–78:2 (ECF No. 18-1).

to [her] schedule[d] shift multiple times last 3 week[s] [sic]."[23] Pietszak signed the coaching form and does not dispute that she was late "multiple times" leading up to receiving the notice.[24] Shortly thereafter, on October 3, 2019, Pietszak's supervisor suspended Pietszak for being "two an[d] [a] half hours" late for her shift.[25] Pietszak admits the foregoing discipline does not encompass all of the instances in which she was absent or late in 2019.[26]

Throughout this time, Pietszak alleges that Mr. Benshoof began "talking to [her] less," "swapping [her] schedule," and "cutting [her] hours."[27] Further, Pietszak asserts that a male coworker in the same department who "didn't have anxiety issues" was disciplined less harshly than she was for similar incidents.[28] Pietszak concedes that her male coworker may have been disciplined for some of his attendance infractions and that she only learned about her male coworker's situation by "communicat[ing] with him about [it]" .[29]

On November 14, 2019, Pietszak emailed Smith's a letter from her therapist requesting leave until November 22, 2019, and stating that "[i]f [leave is] not possible … a store transfer

---

[23] September 20, 2019, Associate/Manager Coaching Form, App'x of Evid. Ex. F (ECF No. 18-1).

[24] *Id.*; Pietszak Dep., Ex. A at 78:14–79:23 (ECF No. 18-1).

[25] October 3, 2019, Written Warning and Suspension, App'x of Evid. Ex. G (ECF No. 18-1); Pietszak Dep., Ex. A at 79:25–80:17 (ECF No. 18-1).

[26] Pietszak Dep., Ex. A at 88:6–11 (ECF No. 18-1).

[27] *Id.* at 64:17–65:11.

[28] *Id.* at 88:6–89:21.

[29] *Id.*; *Id.* at 89:5–11.

would be recommended for the stability of [Pietszak's] mental health."[30] Smith's granted the request for leave under the FMLA, through its third-party administrator MetLife, and was given continuous FMLA leave for 12 full weeks, from November 10, 2019, through February 1, 2020.[31] Pietszak returned to work on February 2, 2020, with a certification from her medical provider stating that she was returning to work with "no restrictions."[32] Upon returning to work, Pietszak was reinstated to her same position, pay, and benefits.[33] She was scheduled for five hours her first week back and was initially scheduled for 43.5 hours her second week back,[34] but ultimately worked less than the 43.5 hours for which she was initially scheduled.[35] Pietszak does not know why she received only five hours her first week back, but admits there was a "department-wide issue" with scheduling.[36] Pietszak testified that "it wasn't just [her] schedule

---

[30] 11/14/19 Alexandra Seng Letter, App'x of Evid. Ex. H; 11/14/19 Email, App'x of Evid. Ex. I (ECF No. 18-1).

[31] 11/14/19 Email, App'x of Evid. Ex. I; 11/15/19 MetLife Packet, App'x of Evid., Ex. J (ECF No. 18-1). While Pietszak's Complaint raises numerous issues related to whether, and the extent to which, she was granted FMLA leave and provided all required FMLA notices, Pietszak concedes that summary judgment is appropriate as to any claim for FMLA "interference" related to such allegations. Given Pietszak's concession, the court does not provide a detailed recitation of the facts related to Pietszak's leave and FMLA notices. *See also,* Pietszak Dep., Ex. A at 171:6–172:7 (ECF No. 18-1).

[32] Return to Work Release, App'x of Evid. Ex. Q (ECF No. 18-1).

[33] Pietszak Dep., Ex. A at 181:7–17 (ECF No. 18-1).

[34] *Id.* at 181:18–182:24.

[35] *Id.* at 183:14–16

[36] *Id.* at 183:2–13.

that was like that . . . . [T]he whole department was switched around and it was a mess."[37] She

admits her supervisor was "trying" to fix scheduling issues in the department.[38]

    After her return to work, Pietszak felt "overworked" and began seeking employment at

another Smith's store.[39] On February 21, 2020, Pietszak "interviewed" at the Smith's "Sunset"

store to obtain an entirely new position.[40] Pietszak asserts that she told the Sunset store she was

seeking employment at Sunset "because of [her] anxiety and PTSD" associated with working at

Store #30.[41] Pietszak did not speak to anyone at Store #30 about seeking to transfer and she did

not tell her Store #30 supervisor that she had interviewed at the Sunset store.[42]

    The department's "scheduling confusion" continued after Pietszak's first two weeks back

to work.[43] Smith's generally posted the schedule two weeks in advance online and on the wall at

the store for each eight-day period.[44] Pietszak was aware of her schedule for February 15, 2020,

through February 22, 2020, because the schedule was posted for those dates.[45] Pietszak admits

that despite knowing she was scheduled to work on February 22, 2020, Pietszak did not come to

work on that day and did not notify anyone that she would be absent.[46] Pietszak acknowledged

---

[37] *Id.*

[38] *Id.* at 183:24–184:4.

[39] *Id.* at 222:11–223:12.

[40] *See id.*; *id.* at 225:4–12.

[41] *See* Return to Work Release, Ex. Q (ECF No. 18-1).

[42] Pietszak Dep., Ex. A at 224:14–16 (ECF No. 18-1).

[43] *Id.* at 185:17–19.

[44] *See* Clicklist Schedule 2/15/20–2/22/20, App'x of Evid. Ex. R (ECF No. 18-1).

[45] Pietszak Dep., Ex. A at 187:10–22, 192:17–19 (ECF No. 18-1).

[46] *Id.* at 192:14–194:16.

she "should have showed up" but testified that she did not come to work on February 22, 2020, because she had "had enough shame" for prior absence problems.[47]

Thereafter, when she was unable to reach a supervisor by phone, Pietszak also did not text or email anyone about her absence or come into the store to determine her work schedule for the days that followed, of which Pietszak claims she was unaware.[48]

Pietszak alleges she was unaware of her schedule for February 23 and 24, 2020 and missed her schedule shifts on those days.[49] Despite still being unable to reach a supervisor by phone, Pietszak also did not text or email anyone at Smith's about obtaining her schedule for February 23 or 24, 2020.[50] On February 24, 2020, Pietszak went into the store "to figure out if [she] was working that day."[51] When she arrived, the Store Director notified Pietszak that she had been terminated for violating Smith's no call, no show policy.[52] When asked why she was terminated, Pietszak stated that she "do[esn't] know, honestly."[53]

Pietszak filed her Charge of Discrimination against Smith's on September 25, 2020.[54]

---

[47] *Id.*

[48] *See id.* ("I didn't know my schedule on [February 23 and 24].").

[49] *Id.* at 198:12–25.

[50] *See id.* at 199:1–4.

[51] *Id.* at 198:12–25.

[52] *Id.* at 203:17–25.

[53] *Id.* at 206:10–12.

[54] *See* Charge of Discrimination, App'x of Evid. Ex. S (ECF No. 18-1).

**STANDARD OF REVIEW**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could find for the nonmoving party in the face of all the evidence presented. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991). In ruling on summary judgment, the Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

**ANALYSIS**

**I.      Pietszak Concedes Summary Judgment Is Appropriate as to Her FMLA Interference Claim.**

Pietszak concedes that her claims premised on FMLA interference "are not viable" and the court finds that summary judgment is appropriate as to Pietszak's FMLA interference claim.[55]

**II.     Pietszak's Title VII and ADA Claims Based on Actions Alleged to Have Occurred Prior to November 30, 2019, Are Time Barred.**

While Pietszak concedes that claims related to Smith's actions or inaction "between May 2019 and November 30, 2019," are based on "discrete actions and time-barred, and, therefore,

---

[55] Pl.'s Opp. to Mot. for Summ. J. at 27 ("Opp.") (ECF No. 21).

not actionable,"[56] she also argues that the "continuing violation" doctrine applies and "lift[s] the time bar" as to those claims.[57] In doing so, Pietszak contends that Smith's "never denied Ms. Pietszak's requests for accommodation in the form of a transfer" and simply "fail[ed] to respond" to such requests, thereby making her ADA failure to accommodate claims timely because they were based on a request that was not denied, if at all, until after November 30, 2019.[58] The court disagrees and finds that all alleged actions occurring prior to November 30, 2019, fall outside of the statutory 300-day window and are untimely as a matter of law.

"Title VII requires a litigant to file a claim within 300 days of the alleged [retaliatory] conduct." *Duncan v. Manager, Dep't of Safety, City & Cnty. of Denver*, 397 F.3d 1300, 1308 (10th Cir. 2005) (citing 42 U.S.C. § 2000e-5(e)(1)). "So, if a discrete retaliatory act occurred more than 300 days before Plaintiff filed her EEOC charge, that act can't support a retaliation claim." *Kincaid v. Unified Sch. Dist. No. 500, Kansas City, Kansas*, 572 F. Supp. 3d 1081, 1090 (D. Kan. 2021). Similarly, "[t]o maintain a retaliation [claim] under the ADA, a Plaintiff 'must have filed an administrative charge within 300 days of the challenged employment action.'" *Bateman v. Nexstar Media Grp., Inc.*, No. 20-4114, 2021 WL 4520982, at *4 (10th Cir. Oct. 4, 2021) (unpublished) (quoting *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1206 (10th Cir. 2007)). In the ADA failure to accommodate context, the point at which a requested accommodation is denied triggers the same 300-day statute of limitations. *See Malas v. Hinsdale Twp. District #86*, 2019 WL 2743590, at *17 (N.D. Ill. July 1, 2019) ("A failure to accommodate

---

[56] Opp. 23; July 20, 2023 Oral Argument Tr. at 20:1–9.

[57] Opp. 23.

[58] Opp. 25–26.

claim accrues when the accommodation is denied."); *Gordon v. Home Depot U.S.A., Inc.*, 191 F. Supp. 3d 1271, 1286 (D. Utah 2016).

Here, Pietszak filed her Charge of Discrimination on September 25, 2020.[59] Thus, all "discrete retaliatory act[s]" occurring prior to November 30, 2019, including the warnings and discipline issued to Pietszak for her tardiness and any alleged denials of alleged requests for ADA accommodation, fall outside of the statutory 300-day period.[60] *See Duncan*, 397 F.3d at 1308; *Bateman*, 2021 WL 4520982, at \*4. In turn, the continuing violation doctrine does not apply to discrete employment actions like those alleged to have occurred prior to November 30, 2019 and therefore does not "lift the time bar" as to Plaintiff's claims. [61] The Tenth Circuit has held that "[t]he continuing violation doctrine allows a plaintiff to recover 'for discriminatory acts that occurred prior to the statutory limitations period if they are part of a continuing policy or practice that includes the act or acts within the statutory period,'" but "[t]he Supreme Court … has rejected the continuing violation doctrine for claims of multiple discrete acts of discrimination, limiting the doctrine to only hostile work environment claims." *See Daniels v. United Parcel Service, Inc.*, 701 F.3d 620, 631–32 (10th Cir. 2012) (citing *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1183 (10th Cir. 2003)). Thus, the continuing violation doctrine has no application to the discrete acts of alleged retaliation in this case that predate November 30, 2019.

---

[59] Charge of Discrimination, App'x of Evid. Ex. S (ECF No. 18-1).

[60] *Id.*; *See* Pietszak Dep., Ex. A at 115:16–22 (confirming that Smith's denied Pietszak's requests for "transfer" when it granted her leave request in November 2019) (ECF No. 18-1).

[61] July 20, 2023 Oral Argument Tr. at 28:1–23; *see* Opp. 23 (ECF No. 21).

Pietszak also argues that her ADA failure to accommodate claim premised on a failure to transfer is timely because Smith's "never denied Ms. Pietszak's requests for accommodation in the form of a transfer."[62] This argument, however, is contrary to the undisputed facts and controlling law. At deposition, Pietszak admitted that her therapist's letter was intended to "excuse her from work," and that the request for transfer contained in the letter was included as an alternative only if leave was "not possible as an option for Milissa."[63] In granting Pietszak's preferred accommodation of leave, Smith's denied Pietszak's alternative request for transfer effective November 14, 2019. That alleged "denial" of a reasonable accommodation—together with all alleged denials prior to that—falls outside the 300-day limitations period.

Moreover, the ADA does not provide Pietszak with the right to the accommodation "of her choice," but only to "a reasonable accommodation." *See Smith v. Midland Brake, Inc., a Div. of Echlin, Inc.*, 180 F.3d 1154, 1177 (10th Cir. 1999) (quoting *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1285–86 (11th Cir. 1997)). There is no dispute that Smith's not only granted Pietszak's request for leave as an accommodation in November 2019, but that leave was Pietszak's accommodation of choice. Pietszak's argument disregards the fact that Smith's elected to grant her preferred accommodation of leave and thereby denied her alternative request for a transfer.[64] Thus, Pietszak's allegations of discrete acts of alleged

---

[62] Opp. 25–26.

[63] *See* Pietszak Dep., App'x of Evid., Ex. A, at 116:24–118:14; 11/14/2019 Seng Letter, App'x of Evid., Ex. H (ECF No. 18-1).

[64] Pietszak does not dispute that in November 2019, she gave her supervisor and store management a note from her therapist requesting that Smith's "excuse [Pietszak] from work" and "allow until November 22nd, 2019, for Milissa to come back to work." 11/14/19 Alexandra

retaliation and any denials of alleged requests for ADA accommodation that occurred prior to November 30, 2019, including Pietszak's alternative request for transfer in November 2019, are untimely under Title VII and the ADA.

Finally, even if the alleged pre-November 2019 actions were not time-barred, Plaintiff makes no effort to argue the merits of those claims. Plaintiff does not dispute that she committed serious violations of Smith's attendance policies in May, June, September, and October of 2019, many of which were for tardiness and absences of multiple hours.[65] Plaintiff also admits that neither the warnings Smith's issued nor her supervisor's conduct rises to the level of an adverse employment action.[66] Thus, whether time-barred or not, there is no genuine dispute regarding any alleged employment actions pre-dating November 30, 2019, and Smith's is entitled to summary judgment on such claims.

### III. Pietszak's ADA Failure to Accommodate Claim Pertaining to Actions After November 30, 2019, Fails on its Merits.

Pietszak contends that she made "daily" requests for transfer to another Smith's store after she returned to work on February 2, 2020, and that these allegations are timely and actionable. To succeed on a claim for failure to accommodate under the ADA, Pietszak must

---

Seng Letter, App'x of Evid. Ex. H (ECF No. 18-1). The letter continues that if leave is "not possible as an option for Milissa, a store transfer would be recommended for the stability of her mental health." *Id.* Pietszak does not dispute that Smith's granted this request for leave and that Pietszak was permitted a full 12 weeks of FMLA leave from November 10, 2019, until her return to work on February 2, 2020.

[65] *See* Opp. Resp. to SOF ¶¶ 14–19.

[66] Opp. 24 ("[T]he disciplinary actions prior to November 30, 2019, are probably not adverse actions and are discrete and time barred ….").

show: (1) she was disabled, (2) she was otherwise qualified for the position, (3) she requested a plausibly reasonable accommodation, and (4) Smith's refused to accommodate her disability. *Aubrey v. Koppes*, 975 F.3d 995, 1005 (10th Cir. 2020). If Pietszak can establish a *prima facie* case, the burden shifts to Smith's to rebut one of the elements or establish an affirmative defense. *Id.*

Pietszak fails to identify any actionable request for ADA accommodation after she returned to work on February 2, 2020. Pietszak claims she made a request for transfer on February 21, 2020, the last day she showed up for a work shift, and that she made other "daily" requests for transfer after she returned to work.[67] Yet neither argument finds support in the record.

First, no actionable ADA accommodation request occurred on February 21, 2020. Rather, on that date Pietszak unilaterally interviewed for a position at the Sunset store---a "different [Smith's] store."[68] Pietszak admits she did not speak to anyone at Store #30 about seeking to "transfer" and that her supervisor was not aware that she was seeking employment or had "interviewed" at the Sunset store.[69] Pietszak's unilateral decision to seek a position at the Sunset store, without notifying any of her current supervisors, cannot be treated as an ADA accommodation request. Absent notice to current supervisors, Smith's could not engage in any interactive process with Pietszak, work with her to identify open positions, or determine whether another accommodation short of a transfer would accommodate Pietszak.

---

[67] Pietszak Dep., Ex. A at 222:11–223:12 (ECF No. 18-1).

[68] *See id.*; *id.* at 225:4–12.

[69] *Id.* at 224:14–16.

Pietszak also claims that she told the Sunset store she was seeking employment "because of [her] anxiety and PTSD" associated with working at Store #30.[70] But her claim directly contradicts Pietszak's own admission that she was released back to work at Store #30 only a few weeks earlier, as of February 2, 2020, without restrictions.[71] Pietszak cannot square her allegation that her unilateral interview at another store constituted an ADA request for accommodation with her admission that she had returned to work at Store #30 without any restrictions.[72]

Second, as to Pietszak's allegation that she made other "daily" requests for transfer "[a]ll of 2019," and after her return to work in February 2020, the record does not reflect such requests.[73] The only "requests for transfer" Pietszak identifies occurred on January 23, 2019

---

[70] *See* Return to Work Release, Ex. Q; Pietszak Dep., Ex. A at 173:19–174:22 (ECF No. 18-1).

[71] *Id.*

[72] Pietszak Dep., Ex. A at 174:13–22, 176:2–14 (ECF No. 18-1). Pietszak stated she "[she] couldn't think of any restrictions that could have helped" or that she "should have had," including that there was no need for Pietszak to have "separate shifts from Eric [Taylor]," who was the alleged source of her anxiety and panic symptoms at Store #30. Further, even if Pietszak had somehow triggered an ADA accommodation interactive process when she interviewed at the Sunset store on February 21, 2020, Pietszak severed that process when she failed to call or attend work on the two days that immediately followed her interview at the Sunset store, resulting in her termination on February 24, 2020. *Id.* at 192:11–193:20, 197:17–199:4 (testifying she did not attend her shift on February 23 or 24, 2020), 203:17–25 (testifying Pietszak came to work on February 24 and was notified she had been terminated for "no-call, no-show"); *see infra*.

[73] *See supra*; Pietszak Dep., Ex. A at 54:19–55:18 (ECF No. 18-1).

(which falls outside the statutory period identified above), and her unilateral pursuit of an interview at the Sunset store on February 21, 2020.[74]

Yet even if there were evidence of "daily" requests for transfer after Pietszak returned to work in February 2020, Pietszak fails to satisfy her burden on summary judgment. In the context of a request for transfer or reassignment as a reasonable accommodation, the employee bears the burden to "show that a reasonable accommodation was possible and would have led to a reassignment position." *Smith*, 180 F.3d at 1174. Thus, "at the summary judgment stage the employee 'must establish that [s]he was qualified to perform an appropriate vacant job which [s]he must specifically identify and show was available within the company at or about the time [s]he requested reassignment.'" *John v. Murray City*, 2023 WL 2694068, at *18 (D. Utah Mar. 29, 2023) (emphasis added) (quoting *Taylor v. Pepsi-Cola Co.*, 196 F.3d 1106, 1110 (10th Cir. 1999)).

The undisputed evidence shows no such available jobs. Pietszak testified that in each instance when she purportedly sought a "transfer" to another Smith's store, the stores "never had enough hours to fulfill [her] getting a job there."[75] In other words, regardless of whether her failure to accommodate claims are timely, Pietszak does not satisfy her burden to identify a job that was "available within the company," and thereby show that her transfer "accommodation was possible and would have led to a reassignment position." *Smith*, 180 F.3d at 1174; *John*,

---

[74] Compl. ¶¶ 21, 55 (ECF No. 1). Pietszak's counsel conceded at oral argument that as to any "post-November 30th requests [for accommodation]," Pietszak did not notify Store #30 of her attempts to obtain a position at another store. July 20, 2023 Oral Argument Tr. at 20:25–22:6.

[75] Pietszak Dep., Ex. A at 59:12–25 (ECF No. 18-1).

2023 WL 2694068, at *18 (finding for employer where employee had "not met his burden of showing a vacant position in the fire prevention office he was qualified for").

Based on the foregoing, the court finds that Pietszak's failure to accommodate claims, related to alleged requests after she returned to work in February 2020, fail on their merits because Pietszak has not satisfied her burden of showing that she requested and was denied a reasonable accommodation under the ADA.

### IV.    Pietszak Fails to Present Evidence of Pretext Related to Her FMLA Retaliation Claim.

To succeed on her claim for retaliation under the FMLA,[76] Pietszak must first establish a *prima facie* case of retaliation. *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006). To state a *prima facie* case Pietszak must show that (1) she engaged in a protected activity under the FMLA; (2) that Smith's took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action. *Id.* If Pietszak can make a *prima facie* case, then Smith's must then offer a legitimate, non-retaliatory reason for the employment action. *Id.* Pietszak then bears the "ultimate burden" of demonstrating that Defendant's proffered reason is pretextual. *Id.* "To raise a fact issue of pretext, [Pietszak] must … present evidence of temporal proximity plus circumstantial evidence of retaliatory motive." *Id.* at 1172; *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007). ("We have characterized the showing

---

[76] The following analysis also applies to Pietszak's ADA retaliation claim as it pertains to Pietszak's termination.

required to satisfy the third prong under a retaliation theory to be a showing of bad intent or 'retaliatory motive' on the part of the employer.").

Pietszak makes two FMLA retaliation allegations: (1) that her schedule upon returning from leave was erratic and different from her schedule prior to her leave, and (2) that Smith's terminated Pietszak on February 24, 2020, in retaliation for her FMLA leave. Pietszak satisfies the first element of her claim because she engaged in FMLA protected activity when she took FMLA leave between November 2019 and February 2020. Pietszak's termination constitutes an adverse employment action and therefore satisfies the second element. Pietszak, however, cannot demonstrate that issues with her schedule after her return from leave constitute a materially adverse action and Pietszak fails to present evidence demonstrating a causal connection between her FMLA leave and any conduct by Smith's, including Pietszak's termination. The undisputed facts show that Pietszak was terminated for failing to show up for scheduled shifts multiple days in a row. Pietszak can present no evidence of pretext, nor of retaliatory motive or intent, required to overcome summary judgment.

A. **Pietszak's Schedule Fluctuations Upon Returning to Work in February 2020 Were the Result of "Department-Wide" Scheduling Issues and Do Not Constitute "Materially Adverse" Employment Action.**

Following her leave, Pietszak admits she was reinstated to her same position, pay, and benefits.[77] Nonetheless, Pietszak she claims that her schedule and hours allocation were not consistent with those before her leave. Specifically, Pietszak alleges she was only scheduled for five hours her first week back, and her second week back, she was scheduled for 43.5 hours—

---

[77] *See* Pietszak Dep., Ex. A at 181:7–17 (ECF No. 18-1).

though she admits this latter number of hours is only what she was scheduled for and she did not work 43.5 hours in her second week back.[78] At least one other court in this circuit has held that "a difference in work hours alone is not an adverse employment action" for purposes of FMLA retaliation. *See, e.g.*, *Mahaffie v. Potter*, 434 F. Supp. 2d 1041, 1048 (D. Kan. 2006). That is necessarily true here, where fluctuations in Pietszak's hours were not inconsistent with her prior work schedule. Pietszak admits that, prior to her leave, her schedule was "always fluctuating because [she] never worked a set amount of hours."[79] Further, Pietszak's allegation that her hours were different pertains only to her first week after returning from leave, as she concedes that in during her second week back her supervisor fixed the scheduling issues "to his capability."[80]

Further, even assuming Pietszak's allegations were sufficient to establish an adverse employment action for purposes of *prima facie* FMLA retaliation, Pietszak admits that her hours allocation was not the result of retaliation, but of "department-wide issue[s]" related to the schedule that existed when Pietszak returned to work.[81] *See Campbell*, 478 F.3d at 1291 (rejecting FMLA retaliation argument at pretext stage about hours reduction that similarly impacted other employees who had not taken FMLA leave). Rather than presenting evidence of retaliatory intent, Pietszak admits she does not know why the department-wide issues existed or

---

[78] *See id.* at 181:18–182:24, 183:14–16.

[79] *Id.* at 208:3–5.

[80] *Id.* at 183:24–184:4.

[81] *Id.* at 183:2–13.

why her hours were different when she returned to work.[82] Pietszak presents no evidence of pretext or retaliatory motive to overcome summary judgment on her FMLA retaliation claim related to scheduling issues upon returning from leave.

### B.   Pietszak Presents No Evidence of Pretext Related to Her Termination.

Next, Pietszak alleges she was terminated in retaliation for taking FMLA leave, but fails to dispute the legitimacy of her termination for violating Smith's attendance policies. Pietszak concedes that Smith's employees will be suspended without pay for a first no call, no show, and terminated for a second violation within two years.[83] Pietszak also does not dispute that she failed to contact her supervisor, failed to show up for her shifts over three consecutive days (February 22, 23 and 23, 2020) and was informed that she was terminated for violating the no call, no show policy on February 24, 2020.[84] Given her multiple warnings and suspension for absenteeism and tardiness between May and October 2019, Pietszak had also committed at least a fifth violation of Smith's excessive absenteeism policy within a 12-month period, for which employees are "subject to discharge."[85] Smith's thus presents legitimate, non-retaliatory reasons for Pietszak's termination that bear no relation to her FMLA leave.

Pietszak asserts that Smith's stated reasons for termination were pretextual because Smith's failed to make her aware of her schedule for February 23 and 24, 2020, and "ignored"

---

[82] *Id.* at 182:10–18; *see also* July 20, 2023 Oral Argument Tr. at 17:2–3 (admitting the "scheduling issues are not in dispute").

[83] *See* Smith's Employee Handbook, Time & Attendance Policies, Ex. B, Pietszak Dep., Ex. A to 81:17–82:5 (ECF No. 18-1).

[84] Pietszak Dep., Ex. A at 203:17–204:2 (ECF No. 18-1).

[85] Smith's Time and Attendance Policies, Ex. B (ECF No. 18-1).

her attempts to call Smith's to obtain her schedule.[86] This argument falls short on multiple fronts. First, Pietszak's pretext argument rests on a fundamental misconception of Smith's policy regarding work schedules, which is that "[i]t is [the employee's] responsibility to know [their] work schedule."[87] Pietszak's pretext argument wrongly assumes that Smith's was responsible to make Pietszak aware of her schedule on February 23 and 24, 2020.

Second, even if Smith's did not place the onus on employees to "know [their] work schedule," Pietszak presents no evidence of pretext beyond her speculation that Smith's was purposely "ignoring" her calls to figure out her schedule. Pietszak points to evidence that she made numerous calls to Smith's in an attempt to obtain her schedule for February 23 and 24, but she fails to account for her admitted no call, no show the day before, on February 22, 2020.[88] The record reflects that Pietszak was aware that she was scheduled on February 22, 2020, but simply chose not to come to work that day, chose not to notify anyone regarding her absence, and chose not to come to the store to obtain her schedule for the following days.[89] Despite failing to reach her supervisor via phone, Pietszak also chose not to text or email her supervisor or

---

[86] *See* Compl. ¶ 59 (ECF No. 1).

[87] *See* Smith's Standard Operating Guidelines at 2-17 (emphasis added), Attachment 1 to Decl. of Cheryl Hedquist, Ex. C (ECF No. 18-1).

[88] Pietszak concedes that an eight-day schedule is posted online and on the wall at the store and was posted for February 15 through February 22, 2020. *See* Clicklist Schedule 2/15/20–2/22/20, Ex. R; Pietszak Dep., Ex. A at 185:22–187:12 (ECF No. 18-1). The record does not show whether a schedule was posted on the store wall for the following week.

[89] Pietszak Dep., Ex. A at 192:14–194:16 (ECF No. 18-1).

anyone else regarding her future schedule, even though she had previously communicated with her supervisors by such means.[90]

On February 23, 2019, still unaware of her schedule and unable to reach anyone by phone, Pietszak again chose not to text or email her supervisor or anyone else regarding her schedule and again chose not to come to the store to obtain her schedule.[91] While Pietszak finally went into the store on February 24, 2019, "to figure out if [she] was working that day,"[92] but by that point, she had already missed two consecutive shifts and was terminated per Smith's attendance policies.[93] Thus, the undisputed facts show that Pietszak alone is responsible for not knowing her schedule. Pietszak's attempt to use her own failures to comply with Smith's attendance policies are not evidence of pretext and fall short of her ultimate burden to prove that Smith's retaliated against her for taking FMLA leave.

In turn, Pietszak's allegation that Smith's was "ignoring" her calls is unsupported by the record and fails to overcome summary judgment. "To raise a fact issue of pretext [in the context of an FMLA retaliation claim], [Pietszak] must … present evidence of temporal proximity *plus* circumstantial evidence of retaliatory motive." *Metzler*, 464 F.3d at 1172 (emphasis in original); *Campbell*, 478 F.3d at 1287. To support an inference of pretext, Pietszak "must produce evidence that the employer did more than get it wrong." *Johnson v. Weld Cty., Colo.*, 594 F.3d 1202, 1211 (10th Cir. 2010). Rather, Pietszak "must come forward with evidence that the

---

[90] *Id.* at 193:12–194:16.

[91] *See id.*

[92] *Id.* at 198:12–25.

[93] *See id.* at 205:22–206:12.

employer didn't really believe its proffered reasons for action and thus may have been pursuing a hidden discriminatory agenda." *Id.*; *Litzsinger v. Adams Cnty. Coroner's Off.*, 25 F.4th 1280, 1287–88 (10th Cir. 2022) (affirming summary judgment for employer where employee "present[ed] no circumstantial evidence to show that the [employer's] proffered reason for terminating her was false or unworthy of belief").

Here, Pietszak's claim that Smith's was "ignoring" her calls is nothing but speculation, and "speculation is insufficient to raise a genuine issue of material fact as to pretext." *Webb v. Level 3 Commc'ns, LLC*, 167 F. App'x 725, 733 (10th Cir. 2006). Beyond her speculation, Pietszak fails to demonstrate that Smith's "didn't really believe its proffered reasons for action." *Johnson*, 594 F.3d at 1211. Additionally, Pietszak presents no evidence of retaliatory intent or motive. To the contrary, when asked why she believes she was terminated, Pietszak testified that she "do[esn't] know, honestly."[94] Pietszak also testified that she believed her supervisor was "doing [his] best" to rectify the department-wide schedule problems,[95] which is inconsistent with Pietszak's allegation that her supervisor and others were conspiring to conceal her schedule so she would be terminated because she had taken FMLA leave in the preceding months.

For these reasons, Pietszak is unable to overcome the legitimate reasons for her termination. Absent any evidence to support her allegation that the reasons for her termination were mere pretext for FMLA retaliation, Smith's is entitled to summary judgment on Pietszak's FMLA retaliation claim.

---

[94] Pietszak Dep., Ex. A at 206:10–12 (ECF No. 18-1).

[95] *Id.* at 191:16–23.

## **CONCLUSION**

For the foregoing reasons, the court hereby GRANTS summary judgment in favor of Smith's on all counts in Pietszak's Complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure.

DATED this 23rd day of August, 2023.

BY THE COURT:

_____
Dustin B. Pead
Magistrate Judge
United States District Court, District of Utah